

ENTERED
07/01/2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LONGHORN PARTNERS PIPELINE L.P. § | | |
| AND LONGHORN PARTNERS GP, L.L.C. § | | |
| § | | |
| **Plaintiffs** § | Adversary No. 09-03182 | |
| § | | |
| v. § | Judge Isgur | |
| § | | |
| KM LIQUIDS TERMINALS, L.L.C. § | | |
| § | | |
| **Defendant** § | | |

## MEMORANDUM OPINION

### Background

Plaintiffs Longhorn Partners Pipeline, L.P. and Longhorn Partners GP, L.L.C. ("Longhorn) filed chapter 11 bankruptcy petitions in Delaware on December 22, 2008.[1] Longhorn owns a pipeline that transports commodities to storage facilities located in Houston, Texas. Longhorn contracted with GATX Terminals Corporation to provide storage terminals for Longhorn. Defendant KM Liquids Terminals, L.L.C. ("Kinder Morgan") is the successor in interest to GATX Terminals Corporation.

On December 4, 2006, Longhorn filed a state court lawsuit against Kinder Morgan in the 15th Judicial District of Harris County, Texas. Longhorn alleges that Kinder Morgan breached the contract by failing to provide Longhorn with promised exclusive access to terminals, refusing to provide required notices, documents, and audits, and overcharging Longhorn for deficiency payments. Longhorn also contends that it was forced to lease additional storage facilities and lost business because of Kinder Morgan's breach. Longhorn seeks actual, consequential, and

---

[1] The Longhorn and affiliated entities' bankruptcy cases are jointly administered with the *In re Flying J Inc., et al.* bankruptcy case (Case no. 08-13384).

special damages and a declaratory judgment clarifying the parties' rights and obligations under the contract.

The lawsuit proceeded in state court for over three years. The state court issued multiple orders, including an order granting partial summary judgment for Kinder Morgan. Nevertheless, on March 12, 2009, Kinder Morgan removed the state court lawsuit to the United States District Court for the Southern District of Texas. District Court Judge Lake subsequently referred the proceeding to this court pursuant to the District Courts General Order of Reference. The General Order automatically refers all bankruptcy cases and related adversary proceedings to the bankruptcy courts.

On March 26, 2009, Longhorn filed a motion to transfer venue from this Court to the Delaware District Court. This Court considered the motion and evidence during a June 17, 2009 hearing. Longhorn generally alleges that the adversary proceeding should be heard by the Delaware Court because the litigation relates to Longhorn's pipeline and the pipeline is an important asset to the bankruptcy cases of Longhorn and affiliated entities. Kinder Morgan contends that most if not all of the relevant parties, evidence, potential witnesses, and state agencies with an interest in the litigation are in or near Houston, Texas.

For the reasons set forth below, the Court denies Longhorn's motion. The evidence overwhelmingly establishes that the Houston venue would be in the interest of justice and more convenient for the parties. Longhorn has not met its burden.

**Jurisdiction**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.

**Core and Non-Core Matters**

The extent of a bankruptcy judge's authority in an adversary proceeding depends on the

core versus non-core characterization of the matters. Generally, bankruptcy judges can issue final orders for core proceedings but can issue only reports and recommendations for non-core proceedings. 28 U.S.C. § 157(b)(1)–(c). However, parties may consent to a bankruptcy court issuing final orders for non-core proceedings. 28 U.S.C. § 157(c)(2); *In re OCA, Inc.*, 551 F.3d 359, 368 (5th Cir. 2008).

On June 24, 2009, Kinder Morgan submitted a brief clarifying that Kinder Morgan consents to this Court issuing final orders and judgments in this adversary proceeding (docket #25). Longhorn also consented to this Court issuing final orders and judgments in Longhorn's statement in response to Kinder Morgan's notice of removal (docket #11). Accordingly, the Court will resolve all issues raised in this adversary through orders and judgments rather than reports and recommendations to the District Court.

Though the Court need not analyze the core versus non-core characterization of this adversary proceeding to determine its authority, the Court must still consider the proper characterization to resolve arguments raised by Longhorn's motion to transfer venue. Longhorn's motion to transfer venue repeatedly characterizes its claims as core and relies upon the core characterization as a basis for transfer. Indeed, a core characterization of the underlying claims would push some venue factors in favor of transferring venue.

Longhorn and Kinder Morgan both argued that this adversary presented core claims. Parties cannot stipulate as to whether a proceeding is core or non-core. Section 157(b)(3) requires bankruptcy judges to determine whether a proceeding is core or non-core. 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."); *In re Kieslich*, 243 B.R. 871

(Bankr. Nev. 1999) (reversed on other grounds). Though parties can stipulate certain facts, parties cannot stipulate conclusions of law or the legal effect of stipulated facts. *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 99, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Hankins v. Lyght*, 441 F.3d 96, 104 (2d Cir. 2006) ("We are required to interpret federal statutes as they are written . . . and we are not bound by parties' stipulations of law.")

The principle that parties cannot stipulate legal conclusions is particularly relevant here, where the legal stipulation may result in transferring the adversary to an inappropriate venue under Title28. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986). Accordingly, a federal court must consider their authority "even though parties are prepared to concede it." *Id*. (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S. Ct. 162, 165, 79 L. Ed. 338 (1934)). Parties cannot circumvent statutory requirements, including venue requirements, through stipulations. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 n.12, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (holding that parties could not stipulate a construction of state law to obtain jurisdiction inconsistent with 28 U.S.C. § 1254(2) and prudential doctrines). This Court must determine the proper venue of this adversary and this Court must make that determination consistent with the applicable statutes, regardless of the parties' legal stipulations.

Section 157(b) of Title 28 of the United States Code defines core and non-core

proceedings. 28 U.S.C. § 157(b). Section 157(b)(2)(A)-(P) list specific examples of core proceedings. Even if a matter falls within the literal language of § 157(b)(2)(A)-(P), the matter must also generally arise under title 11 or arise in a title 11 bankruptcy case to constitute a core proceeding. The Fifth Circuit has defined core versus non-core matters consistent with § 1334(b)'s jurisdictional grants of authority. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96–97 (5th Cir. 1987). A case arises under title 11 "[i]f the proceeding involves a right created by the federal bankruptcy law." *Id*. at 97. A case arises in a case under title 11 "[i]f the proceeding is one that would arise only in bankruptcy." *Id*. "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . under § 157(c)(1) it is an 'otherwise related' or non-core proceeding." *Id*.

Longhorn's venue arguments incorrectly characterize this adversary proceeding's underlying claims as core. Longhorn's complaint asserts contract claims. None arise under the Bankruptcy Code or could only arise in a bankruptcy case. All are state law causes of action that can arise outside of bankruptcy. The claims are non-core.

Longhorn nevertheless contends that the claims fall under § 157(b)(2)(O), which encompasses "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." Longhorn notes that its contract claims could lead to a multi-million dollar judgment that would significantly affect the assets of the estate. Longhorn's claim falls within the literal language of § 157(b)(2)(O).

But not all claims that fall within the literal language of § 157(b)(2)(O) can constitute core claims. Almost all debtor claims may affect the estate in that they could lead to a judgment increasing or decreasing the estate assets. If the Court accepted Longhorn's contention, then

virtually all "related to" proceedings would be considered core. Section 157 would serve no purpose.

Longhorn's contention runs afoul of the Supreme Court's *Marathon* decision. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (U.S. 1982). In *Marathon,* the defendant challenged the constitutionality of a bankruptcy judge's authority to exercise full Article III judicial power over breach of contract, warranty, misrepresentation, coercion, and duress claims asserted against the defendant. *Id.* at 56–57. These state law claims would affect the debtor's estate and fall under the literal language of § 157(b)(2)(O) in that they could lead to a judgment that would increase estate assets. Yet the *Marathon* opinion explicitly stated that bankruptcy judges could not exercise Article III judicial power with respect to pure state law claims that involved purely private rights unrelated to the bankruptcy process. The Court held:

> But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.

*Id.* at 71.

Under the Constitution, Article I bankruptcy judges can issue final orders only with respect to public rights, unless all parties consent to the issuance of final orders by the bankruptcy judge. Accordingly, the Supreme Court held that state law causes of action that do not implicate bankruptcy-related public rights can only be resolved through final orders by Article III judges. Subsequently, § 157's core versus non-core claims provision and the report and recommendation system were born.

If § 157(b)(2)(O) were read to include any money damages that may be owed to the debtor at the conclusion of litigation, then bankruptcy courts would issue final orders on the very

6

state law claims implicated in *Marathon*. Under *Marathon* and the Fifth Circuit's *In re Wood* opinion, § 157(b)(2)(O) issues generally must be limited to claims that arise under title 11 or arise in a case under title 11 in addition to having an affect on estate assets and debtor-creditor relations. *In re Wood*, 825 F.2d at 96–97; *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990); *Mirant Corp.*, 337 B.R. at 116; *Acolyte Elec. Corp. v. City of N.Y.*, 69 B.R. 155, 175 (Bankr. E.D. N.Y. 1986) ("An action is not a core proceeding simply because the outcome of a state law type action can result in funds being brought into an estate; but rather, that connection makes it a 'related proceeding.'").

For the purposes of evaluating the venue transfer arguments, the Court finds that Longhorn's claims are non-core.

## Transfer of Venue

Section 1412 is the change of venue provision specific to bankruptcy cases and adversary proceedings. Section 1404(a) is the general change of venue statute applicable to civil cases filed in an appropriate district court.[2]

Section 1412's application is limited to core matters. 28 U.S.C. § 1412; *Searcy v. Knostman*, 155 B.R. 699, 706–07 (S.D. Miss. 1993) (citing numerous cases); *In re Manchester, Inc.*, 2009 WL 1533614 (Bankr. N.D. Tex. June 1, 2009); *Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, 2003 WL 298799 at *2 (N.D. Tex. Feb. 10, 2003) (citing *Searcy*, 155 B.R. 699). Section 1412 provides: "A district court may transfer a case or proceeding *under title 11* to a

---

[2] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Section 1406(a) governs transfers of venue for cases initially filed in an improper venue. Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added). Repealed § 1474, § 1412's predecessor, provided for transfer of cases "under title 11 or a proceeding arising under or related to such a case." *Searcy*, 155 B.R. at 707. Section 1412 specifically excludes any references to "related to" proceedings. *Id*. "Arising under" refers to core matters that arise under the Bankruptcy Code, as opposed to related matters that may affect the bankruptcy estate but do not arise under the bankruptcy code. *In re Wood*, 825 F.2d at 93. As discussed earlier, Longhorn's claims are non-core.[3]

Longhorn's adversary proceeding may still be subject to transfer under § 1404(a). *Searcy*, 155 B.R. at 707. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Longhorn's non-core bankruptcy-related adversary proceeding is unquestionably a civil action. The adversary could have been filed in Delaware pursuant to § 1409. 28 U.S.C. § 1409. The remaining question is whether transfer would be "for the convenience of the parties and witnesses, in the interest of justice."

Courts consider private and public interest factors when determining whether transferring venue is for the convenience of parties and witnesses and in the interest of justice. *Humble Oil & Ref. Co. v. Bell Marine Serv.,* 321 F.2d 53, 56 (5th Cir. 1963); *MC Asset Recovery, LLC v. S.*

---

[3] Even if Longhorn's adversary proceeding were deemed core and subject to consideration under § 1412, the Court's analysis would not change. The only difference between § 1404 and § 1412 is that § 1404(a) adds an additional restriction, providing that an action may only be transferred to a court in which venue would have been valid in the first instance. *Sabre Techs., L.P. v TSM Skyline Exhibits, Inc.*, 2008 WL 4330897 at *8 (S.D. Tex. Sept. 18, 2008) (citing *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004)). Both grant courts the discretion to transfer an action "for the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. §§ 1404(a), 1412. *See also* Fed. R. Bankr. P. 1014. Considering the nearly identical language in § 1404(a) and § 1412, courts have generally applied the same analysis to both. *Sabre Techs., L.P.*, 20008 WL at *8 (citing 15 Charles Alan Wright, Arthur R. Miller & Edward D. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3843 at 26 (3d ed. 2007)). *See also Norton v. Encompass Servs. Corp.*, 301 B.R. 836, 839 (S.D. Tex. 2003); *MC Asset Recovery, LLC*, 339 B.R. at 382–83; *In re Victorville Aerospace, LLC*, 2008 WL 5482785 (Bankr. S.D. Tex. Dec. 9, 2008).

*Co.*, 339 B.R. 380, 383 (N.D. Tex. 2006).

    The private interest factors are:

> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses;
> (3) the cost of attendance for willing witnesses; and
> (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).

    The public interest factors are:

> (1) the administrative difficulties flowing from court congestion;
> (2) the local interest in having localized interests decided at home;
> (3) the familiarity of the forum with the law that will govern the case;
> (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id*.

    No single factor carries dispositive weight. *Id*. Nor are the factors "necessarily exhaustive or exclusive." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964)); *In re Volkswagen AG*, 371 F.3d at 203.

    The movant bears the burden of proof and must establish "good cause" for transferring venue. *In re Volkswagen of Am.*, 545 F.3d at 315. To establish "good cause," the movant must "clearly demonstrate that a transfer is '[for] the convenience of parties and witnesses, in the interest of justice.'" *Id*.

**Analysis**

Longhorn contends that the adversary proceeding should be transferred to Delaware because it revolves around the pipeline, an asset that is "core" to the bankruptcy estates of Longhorn and related entities. Longhorn glosses over the fact that the adversary, though related to the pipeline, concerns state law contract claims based on conduct occurring in Texas. The adversary proceeding will be resolved by analyzing evidence and testimony from witnesses located in or near Houston, Texas. The adversary proceeding will be litigated by attorneys from Texas. Moreover, the evidence demonstrated that the pipeline is in the process of being sold. The preliminary sale agreements take into account the contingent nature of the adversary. Longhorn's witness testified that the sale will occur before the adversary can be resolved and consequently will have no material effect on the sale of the pipeline. All the private and public interest factors are neutral or favor the Houston venue.

The Court considers the weight of the private and public interest factors separately below.

*i. Private Interest Factors*

The aggregate of the private interest factors favors the Houston venue.

### a. The Relative Ease of Access to Sources of Proof

Kinder Morgan's witness, David Barrow, Kinder Morgan's director of petroleum development and Kinder Morgan's employee responsible for coordinating this adversary proceeding, testified that substantially all relevant witnesses and evidence were located in or near Houston. No evidence or witnesses are located in Delaware. Kinder Morgan's lawyers are located in Houston, Texas. Longhorn also has attorneys in Texas. No members of the official unsecured creditors' committee are located in Delaware, while two are located in Texas. Longhorn's witness, John Boken, the chief restructuring officer for Longhorn and related

10

entities, admitted that most relevant evidence and witnesses are located in or near Houston. If discovery disputes requiring witnesses arise, Houston will be a more convenient venue.

The Court finds that the "relative ease of access" factor favors the Houston venue.

### b. The Availability of Compulsory Process to Secure the Attendance of Witnesses

Most if not all relevant witnesses are located in or near Houston. These witnesses are within this Court's subpoena power, but outside the Delaware Court's subpoena power.

The Court finds that the "compulsory process" factor favors the Houston venue.

### c. The Cost of Attendance for Willing Witnesses

Again, most if not all relevant witnesses are located in or near Houston. Longhorn notes that Longhorn, related bankruptcy entities, and Kinder Morgan are all incorporated in Delaware. Longhorn contends that various parties with an interest in the Longhorn or related bankruptcy cases may wish to appear and monitor the case. However, as discussed above, every material aspect of this case is located in or near Houston, Texas. The venue analysis takes into account the cost to witnesses and parties with legal standing, not individuals who may have a financial interest in the outcome of the litigation but who will not serve as witnesses and are without standing.

The Court finds that the "cost of attendance" factor favors the Houston venue.

### d. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive.

Longhorn largely argues that Delaware is the proper venue because the pipeline related to the contracts at issue is a core asset to the bankruptcy estates of Longhorn and related entities. Longhorn contends that the litigation could affect proceeds from the proposed sale of the pipeline, which would in turn affect the Longhorn and related bankruptcy cases.

The evidence does not support Longhorn's contentions. Mr. Barrow testified that the outcome of this litigation will not materially affect the sale. The proposed purchase agreement takes into account the contingent nature of this litigation. Section D of Exhibit D of the purchase agreement provides that proceeds from pending litigation will go to the benefit of the seller and the seller will indemnify the buyer for any losses arising from the pending litigation. The outcome of the litigation will therefore not affect the sale value because the outcome will not beneficially or adversely affect the seller. Moreover, the proposed agreement provides that any proceeds from the litigation will be used to satisfy a $215 million debt. Mr. Barrows testified that, at most, the litigation would result in a judgment of $13 million. Accordingly, at best and at worst, the litigation's outcome will shave or add a few million dollars over a $215 million debt.

The proposed sale's immunity from this adversary proceeding was further demonstrated by Mr. Barrow's testimony regarding the sale process. Mr. Barrow testified that the sale process had already matured into the final phases. Mr. Barrow testified that Longhorn hoped to file a § 363 sale motion in approximately a week, hold an auction in early August, and close on the sale by the end of August. No one contends that this adversary proceeding will be resolved by August.

Longhorn also contends that the Delaware Court has greater familiarity with the issues involved in this litigation. Longhorn notes that the Delaware Court has heard numerous motions in the Longhorn and related entities' bankruptcy cases, including matters concerning financing, maintaining, and selling the pipeline. This adversary proceeding revolves around contract issues and past conduct, not maintaining or selling the pipeline on a going-forward basis. The issues are distinct from issues previously considered by the Delaware Court. If any court has greater knowledge over the issues specific to this adversary, it is this Court. This Court has heard and

considered lengthy oral arguments and briefs specific to this adversary proceeding.

However, venue issues have been the focus of this court, not the merits of the underlying dispute. Accordingly, the Court finds that this Court has a greater familiarity with the facts and issues of this adversary, but not to an extent that the Court's knowledge bears any material weight in the venue analysis.

The Court finds that the "all other practical problems" factor favors the Houston venue.

### ii. Public Interest Factors

The aggregate of the public interest factors also favors the Houston venue.

#### a. The Administrative Difficulties Flowing from Court Congestion

The Court does not have an overburdening case load such that court congestion would impair administration of this case. Nor did Kinder Morgan produce any material evidence suggesting that the Delaware Court's docket would preclude timely adjudication of this matter. The Court gives no weight to this factor.

The Court finds that the "administrative difficulties" factor is neutral.

#### b. The Local Interest in Having Localized Interests Decided at Home

Texas has a significant interest in this adversary proceeding. The asset underlying this adversary proceeding is the Longhorn pipeline. The pipeline carries oil and gas underground and across the western part of the state, from Houston to El Paso, Texas. The pipeline creates obvious environmental concerns. Mr. Barrow testified that numerous state agencies have a significant interest in the pipeline, including the Texas Railroad Commission, the Texas Commission on Environmental Quality, the Texas General Land Office, the Lower Colorado River Authority, and the City of Austin. Additionally, Longhorn and Kinder Morgan employ numerous Houstonians and other Texas residents. Longhorn and Kinder Morgan employ no

Delaware residents.

The Court finds that the "local interest" factor favors the Houston venue.

### c. The Familiarity of the Forum with the Law that will Govern the Case

The adversary proceeding will require application of Texas state law. Delaware law is not implicated. This Court has greater familiarity with Texas law.

The Court finds that the "familiarity of the forum" factor favors the Houston venue.

### d. The Avoidance of Unnecessary Problems of Conflict of Laws [or in] the Application of Foreign Law

No party suggested that this Court's retention of jurisdiction would give rise to conflict of law issues or the need to apply foreign law.

The Court finds that the "avoidance of unnecessary problems of conflict of law" factor is neutral.

### *iii. Longhorn's Venue Choice*

Longhorn notes that many courts have held that the venue of the bankruptcy petition is presumed to be the proper venue for any adversary proceeding involving the debtor. Under 28 U.S.C. § 1409(a), "venue of an adversary proceeding is presumed proper in the district where the debtor filed its bankruptcy case . . . " *Manchester Inc. v. Lyle (In re Manchester, Inc.)*, 2009 WL 1533614, at *4 (Bankr. N.D. Tex. June 1, 2009) (citing *In re Conmaco/Rector, L.P.*, 348 B.R. 362, 367 (Bankr. E.D. La. 2005)). Based, in part, on § 1409(a) and its predecessor, § 1473, courts have held that there is a "home court presumption" favoring transfer of adversary proceedings to the court adjudicating the bankruptcy case. *Orthodontic Cents. of Tex., Inc. v. Corwin*, 2007 WL 173220, at *1 (S.D. Tex. Jan. 18, 2007) ("There is a strong presumption that proceedings 'related to' a bankruptcy should be litigated in the judicial district where the bankruptcy itself is pending.") (citing *Zhang v. Rothrock*, 2006 WL 213951, at * 1 (S.D. Tex.

Jan. 25, 2006)); *In re Grogg*, 295 B.R. 297, 306–07 (Bankr. C.D. Ill. 2003); *Hohl v. Bastian*, 279 B.R. 165, 177–78 (W.D. Pa. 2002); *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 723–24 (Bankr. W.D. Pa. 1982).

However, the majority of the "home court" presumption cases involve core matters. This Court does not address whether core matters can be more efficiently resolved in the court administering the bankruptcy case. However, the factors that give rise to the presumption for core matters are not implicated by non-core matters that are merely "related to" the bankruptcy case. The home court may still be the more appropriate venue for adjudicating "related to" proceedings. However, the presumption that the home court is the proper venue is not warranted and the court must consequently undertake a venue analysis. *See In re Continental Air Lines, Inc.*, 61 B.R. 758, 770 & n. 25 (S.D. Tex. 1986) (noting that the home court presumption is based on the idea that "administrative matters," or core matters, are "properly handled in a single, centralized forum," but the same principle does not apply to "truly civil litigation in the historic sense," or non-core matters).

Additionally, the Fifth Circuit has recently issued an opinion suggesting that a party's choice of forum should be given little if any weight in a venue analysis. *In re Volkswagen*, 545 F.3d at 315 & n.10 (5th Cir. 2008). In *Volkswagen*, the Fifth Circuit noted "[b]ecause large corporations, like Volkswagen, often have sufficient contacts to satisfy the requirement of § 1391(c) for most, if not all, federal venues, the general venue statute 'has the effect of nearly eliminating venue restrictions in suits against corporations.'" (quoting 14D Wright, Miller, & Cooper, FEDERAL PRACTICE & PROCEDURE § 3802 (3d ed. 2007)). However, Congress "tempered the effects of this general venue statute by enacting the venue transfer statute . . . that . . . should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants

to venues that are inconvenient under the terms of § 1404(a)." *Id*. Section 1404(a)'s purpose of preventing parties from abusing the broad general venue statutes would be defeated if a debtor or plaintiff's choice of forum were presumed the proper venue.

Though the *Volkswagen* opinion involved a lawsuit outside of the bankruptcy context, the Court sees no reason why the same analysis does not also undercut the home court presumption, particularly for non-core matters. The national trend is for major corporations to file bankruptcy petitions in New York or Delaware rather than the debtor's principal place of business. Large corporations filing bankruptcy petitions have sufficient contacts to satisfy § 1408 for most, if not all federal venues. Congress enacted § 1412 and § 1404 to preclude parties from using the broad venue statutes to inconvenience or harm creditors and defendants involuntarily brought into the case. The purpose of § 1412 and § 1404 would be diluted if courts assumed that the debtor's choice of forum is presumptively the proper venue for "related to" adversary proceedings.

Respecting a debtor's choice of venue for a bankruptcy petition raises separate issues from motions to transfer an adversary proceeding. The fact that debtors are allowed to file bankruptcy petitions within particular districts regardless of the presence of actual operations in those districts does not mean that debtors should also be allowed to force involuntary defendants into a distant and inconvenient venue to defend charges raised in an adversary proceeding. In a sense, creditors are also involuntarily forced into a distant and inconvenient venue when bankruptcy petitions are filed in districts unrelated to the debtor's principal business. But forcing a creditor into a distant and inconvenient venue to *defend* claims asserted by the debtor in a distant and inconvenient venue raises *Volkswagen* concerns. The Court must follow the implications of the Fifth Circuit's *Volkswagen* opinion. *In re Volkswagen of Am.*, 545 F.3d at 315

16

& n.10.

## Conclusion

For the reasons set forth above, the Court denies Longhorn's motion to transfer venue.

SIGNED **June 30, 2009.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE